UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **LERIOD BAKER, aka LEROID BAKER**<br>    **LA. DOC #217930**<br>**VS.** | **CIVIL ACTION NO. 3:10-cv-0612**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **WARDEN DALE YELVERTON, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Leriod Baker, aka Leroid Baker, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on April 4, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is currently incarcerated at the David Wade Corrections Center (DWCC), Homer, Louisiana, but he complains that he was denied prompt medical care while he was a prisoner at the Jackson Parish Detention Center (JPDC) during the summer of 2009. Plaintiff sued JPDC Warden Dale Yelverton and Nurse K. Johnson seeking compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

Plaintiff, an inmate in the custody of the LDOC, was incarcerated at the JPDC on June 24, 2009. On that date he slipped and fell in the shower. The ring finger on his right hand was bent and within 20 minutes it was swollen. On his way to the dining hall he stopped by the infirmary and

spoke to Nurse K. Johnson. Plaintiff told her what had happened and she advised him to ice it since it was swollen.

Later that night, plaintiff "made medical emergency to seek medical attention and get to the hospital since they don't have any nurse working at night." Two corrections officer observed plaintiff's finger and filled out a sick call slip and placed it on the Nurse's desk for the next morning. However, plaintiff was not seen on Thursday. On Thursday evening a corrections officer noted plaintiff's condition and filled out another sick call request and put it on the Nurse's desk for Friday.

On Friday, June 26, 2009, plaintiff was seen again by the nurse who asked if he had iced the injury as directed. Plaintiff replied in the affirmative. Nurse Johnson gave him Epsom salts and instructed him to continue soaking the injury through the weekend and return on Monday.

Plaintiff did as he was instructed and on Monday, June 29, 2009, he returned to see the nurse. Since the finger was still swollen, she put plaintiff on the "Doctor's Call Out" list.

A week later, plaintiff was examined by Dr. Hearne from DWCC who advised Nurse K. Johnson to send plaintiff to E.A. Conway Hospital for x-rays. Plaintiff was taken to the hospital "a few days later"[1] and the Orthopaedic physician referred plaintiff to the LSU Medical Center in Shreveport.

A "couple of days later" plaintiff was taken to LSU Medical Center where additional x-rays were taken and reconstructive surgery was recommended. Someone at LSU advised, "... by them taking so long to get me medical attention... [plaintiff] came close to having [his] finger amputated."

A "day or so" later, plaintiff had surgery and pins were inserted to knit the bones in his finger

---

[1] In his "Memorandum of Law" plaintiff contends that "after a period of like 3-5 weeks it was determined that his finger was broken and he needed to be transported to E.A.Conway Hospital for treatment." [Doc. 1-2, p. 2]

back together. "[A]bout a month and a half" later, the pins were removed but plaintiff contends that he still cannot bend his finger and it is "scarred permanently." The physician also advised plaintiff that "... by Nurse K. Johnson waiting so long for to get me medical attention that my [pinky] finger was broken also but by them waiting so long to get me help it healed up on its own."

Plaintiff is apparently still going to LSU Medical Center for follow-up visits and treatment.

In an Inmate Grievance submitted on some unspecified date after the incident, plaintiff accused the Warden of negligence for failing to fix the problem that caused him to slip and fall in the first place. He accused Nurse K. Johnson of "malpractice" for "taking so long to get [him] medical attention."

*Law and Analysis*

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97. Plaintiff has provided an articulate complaint, a memorandum in support of the complaint, and a copy of the grievance he filed, all of which outline in detail the events which occurred in the summer of 2009 along with plaintiff's theory of liability.

Plaintiff has pleaded the facts needed to resolve this matter on initial review, and those facts have been accepted as true for the purposes of this Report. Further amendment is unnecessary.

### 2. Delayed Medical Treatment

Plaintiff does not claim that he was denied appropriate medical treatment, he claims rather that appropriate treatment was delayed. Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the offending prison

officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas,* 245 F.3d at 458-59. Deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.*" Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). "[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)

5

(citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir .1985)). Disagreement with diagnosis and treatment can never support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Plaintiff's complaints were not ignored; he was not intentionally treated incorrectly. Indeed, the pleadings and exhibits establish that plaintiff's injury was treated and is still being treated.

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir.1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. See *Mayweather v. Foti*, 958 F.2d. 91 (5th Cir.1992); *Woodall*, *supra*.

Further, delay in providing medical care to a prisoner rises to a violation of the Eighth Amendment only if there is <u>deliberate indifference</u> which results in <u>substantial harm</u>. *Mendoza v. Lynaugh*, 989 F.2d. 191, 195 (5th Cir.1993); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993); *Citrano v. Allen Correctional Center,* 891 F.Supp. 312 (W.D.La.1995); *Shapley v. Nevada Board of State Prison Commissioners*, 766 F.2d 404, 407 (9th Cir.1985)(delay in medical treatment must cause substantial harm in order to violate the constitution).

Here, there is no reason to believe that the defendants purposefully delayed providing either a diagnosis or appropriate treatment. In any event, plaintiff has not alleged that these moderate delays were either purposeful or that they resulted in substantial harm. In fact, the evidence submitted by plaintiff would not support such a claim. By his own admission, plaintiff was examined by Nurse Johnson within a short time of the accident. She observed swelling and recommended icing

the injury. That recommendation was clearly not an unreasonable approach under the circumstances. Plaintiff was seen again by the nurse two days after the accident and, when she discovered that the icing was ineffective, she provided epsom salts and advised plaintiff to soak the finger for the weekend.

On the following Monday, plaintiff was put on the "Doctor's Call Out" list and by the following week he was examined by a physician who sent him for x-rays. When the x-rays revealed the nature of his injury, he was then sent to an orthopaedic specialist at the LSU Medical Center where surgery was performed.

Plaintiff faults Nurse Johnson for her erroneous diagnosis and treatment; however, as shown above, such errors do not support a claim for deliberate indifference. Plaintiff has accused her of malpractice, and even that allegation is insufficient to establish deliberate indifference. Negligence, unsuccessful medical treatment, or even medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999); see also *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (finding disagreement as to the correct medical treatment does not constitute an actionable civil rights claim).

Finally, plaintiff has alleged no fault with regard to Warden Yelverton.. To the extent that he maintains that Yelverton is liable under a theory of *respondeat superior*, he has failed to state a claim for which relief may be granted. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660

(1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983).

*3. Conclusion and Recommendation*

Plaintiff has not shown that the defendants or anyone else was deliberately indifferent to his serious medical needs. He experienced moderate delays in obtaining treatment. Finally, he has not shown that he suffered substantial harm as a result of the delays.

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United***

*Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**In Chambers, Monroe, Louisiana, July 2, 2010.**

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**